GORDON, Respondent, v. CHURCHILL, Appellant.

(148 N. W. 848.)

1. **Contracts—Exchange of Letters—Sale of Land—Mutual Covenents—Certainty Required.**

A valid contract may be entered into through exchange of letters, but the mutual covenents therein must be stated with the same degree of certainty as required when the entire contract is contained in one instrument; and it must appear that both parties agreed upon the same identical thing. So **held,** concerning a contract for sale of land.

2. **Contracts—Meeting of Minds, How Determined—Exchange of Letters.**

In determining whether there was a meeting of minds of the parties to an exchange of letters in a land sale transaction, all parts of the letters, and their relation to and bearing upon each other, must be considered.

3. **Sales—Sale of Land—Exchange of Letters—Sale of Equity, or Land?—Meeting of Minds.**

Defendant, who had purchased land adjoining plaintiff's land, wrote for terms on the property, and plaintiff requested an offer, stating that his land was incumbered. Defendant, in reply, stated that $9 an acre was all he was giving for the adjoining land, and that he would give that for a quitclaim deed. Upon plaintiff's accepting the offer, defendant sent him a draft for the balance above the incumbrances, and a quitclaim deed for execution. **Held,** that, as the proposal was susceptible of the meaning given it by defendant, to-wit, that he was purchasing the land, and not merely plaintiff's equity therein above incumbrances, which meaning was different from that placed upon the offer by plaintiff, there was no valid contract, and plaintiff was not entitled to retain the draft sent, and to claim the remainder of purchase price.

**4. · Evidence—Letter Subsequent to Completion of Contract—Explanation of Previous Offer.**

> A letter written by one party to an alleged land sale contract, after the date of completion of the contract, while not part of the contract, may be examined for purpose of ascertaining the understanding of its writer of language used by him in a previous letter which is part of the contract.

McCoy and Whiting, J. J., concurring in the result only.

(Opinion filed October 6, 1914.)

Appeal from Circuit Court, Minnehaha County.   Hon. JOSEPH W. JONES, Judge.

Action by P. S. Gordon against A. L. Churchill, to recover a balance claimed to be due plaintiff upon a sale of land; defendant counterclaiming.   From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Reversed and remanded.

*Robertson & Dougherty,* for Appellant.

*Krause & Krause,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

Anson on Contracts, 13, 14, 22, 23.

Respondent cited:

Wald's Pollock on Contracts, by Williston, 3rd Ed., pages 308, 311, 5; 9 Cyc. 245, 575, 398-9; Horgan v. Russell (N. D.) 140 N. W. 99; Schaefer v. Olson (N. D.) 139 N. W. 983; Kreutzer v. Lynch (Wis.) 100 N. W. 887.

(3) Under point three of the opinion, Appellant submitted:

The minds of the plaintiff and of the defendant never met. One party intended one thing, the other another; and cited:

Page on Contracts, Vol. 3, Secs. 1607-8, p: 2442; Vol. 1, Secs. 44, 45; Clark on Contracts, p. 61, and cases cited in note to 112; Bishop on Contracts, Secs. 323-324; Riley v. Grant, 16 S. D. 553; Stearns v. Clapp, 16 S. D. 558; Richards Trust Co. v. Beach, 17 S. D. 432; Jepson v. Mohran, 25 S. D. 593, and cases cited; Lichty v. Daggett, 23 S. D. 380; O'Brien v. Gilliland, 23 S. W. 244; Vol. 1, Warvelle on Vendors, Secs. 100, 125.

POLLEY, J.   In this action, plaintiff asks to recover from defendant $1,955.43 claimed by plaintiff to be a balance due from defendant upon the sale of a piece of land.   In his complaint, plaintiff alleges that he quitclaimed the land in question to defendant for the agreed price of $3,953.70, that defendant has paid

$1,998.27, and that there is still a balance due him from defendant of $1,955.43. · Defendant, by way of answer, counterclaim, and cross-bill, alleged that plaintiff and defendant entered into a contract whereby plaintiff agreed to sell to defendant the tract of land in question for the sum of $3,953.70, less the amount of the incumbrances against the land; that the incumbrances amounted to $1,955.43, leaving a balance due plaintiff of $1,998.27; that defendant had forwarded to the Home National Bank of Dell Rapids a deed, to be executed by plaintiff, and a draft for said sum of $1,998.27, with instructions to the bank to deliver the draft to plaintiff on the execution and delivery of the deed to the bank for defendant; that the bank failed to obey said instructions, but, in lieu thereof, it entered into a combination with plaintiff, whereby the draft was to be delivered to plaintiff upon the execution of the deed; but the deed was to be retained by the bank until the balance of the purchase price of the land, amounting to $1,955.43, was paid plaintiff; and, in his prayer for relief, asked that the plaintiff be compelled to deliver the deed without further payment, or to return to defendant the amount of the draft he had paid to plaintiff.

The undisputed facts, as they appear from the record, are as follows: Plaintiff resides in Dell Rapids, S. D., and is president of the Home National Bank of that place; defendant resides in Vinita, Okla., and is vice president of the First National Bank of that place. Plaintiff owned a tract of 439.3 acres of land in Lamb county, Tex.; defendant was in the act of acquiring title to the section adjoining plaintiff's land, and, on the 5th day of July, 1912, he wrote plaintiff as follows:

. "* * * I am buying a section adjoining yours, and I thought if you would like to sell your 439 acres and make me a price on it I could handle it in connection with the other that I might take it up.

"Kindly notify me what you would like to do in this matter."

On July 7th, plaintiff wrote defendant that he had never seen the land; that, if defendant owned land adjoining it, he ought to know more about the value of it than plaintiff did, and asked defendant to submit an offer. He also stated in the same letter that the land was incumbered for about $2,000. On July 10th defendant wrote plaintiff that, just as soon as he got the other deal

closed up, he would let plaintiff know what he thought he could handle plaintiff's land for, and, on the 26th day of July, he wrote plaintiff as follows:

"Nine dollars is all I am giving for section next to yours. Will give you that for a quitclaim deed to yours. Want it for pasture."

To this letter, plaintiff, on July 29th, replies as follows:

"I had hoped to break even on this land by losing the int. but your offer even cuts off part of the original good hard money put into the deal. * * * Want to close up all outside deals so am going to accept your proposition. Make your quitclaim to suit yourself and send it to our bank. * * * Just pin draft to the deed. I will sign and return to you with all papers in my possession. * * *"

On August 17th defendant wrote the Home National Bank at Dell Rapids, as follows:

"I am inclosing your draft for $1,998.27, which I will ask you to turn over to Mr. P. S. Gordon when he executes one of the quitclaim deeds herein inclosed. * * *"

And, on the same day, he wrote to plaintiff, notifying him that the deed and draft had been forwarded to the bank, and also the following:

"You will notice that the draft is for $1,998.27. There were 439.30 acres of land and the price was $9.00, which makes your land $3,954.00; and you owed Mr. Halsell six notes of $307.50 each, which amounts to $1,845.00; and you also owed him interest from January 1st to August 1st, the date we made this trade, which amounts to $46.14, and you owe the George G. Wright Company $64.59, which makes a total amount of indebtedness against the land of $1,955.75. This from the $3,954.00 leaves the amount of the draft, $1,998.27."

Upon the receipt of this letter, plaintiff went to the bank and executed one of the deeds and received the draft for $1,998.27, but instructed the cashier of the bank to hold the deed until the balance of the purchase price of the land, $1,955.43, had been paid. And, on August 21st, he wrote defendant as follows:

"Your draft for $1,998.27 rec'd and placed to your credit, leaving a bal. my due of $1,955.43. You will remember you made me an offer of $9.00 per acre for a quitclaim deed, but in making

remittance you deducted the indebtedness. A quitclaim deed as I understand it means to quitclaim my equity, which I have done, and the deed is now with the Home Nat'l Bank of Dell Rapids and will be forwarded to you on rec't of draft for above amt."

Some further correspondence took place between plaintiff and defendant relative to the deed, but, on the 9th day of September, 1912, defendant having come on to Dell Rapids, plaintiff caused a tender of the deed to be made to defendant, and immediately commenced this action. At the conclusion of the trial, the court found, as a fact, which, in realty, is a conclusion of law:

"That by said correspondence the plaintiff and defendant contracted that plaintiff would convey to defendant his equity in and to the lands described in the complaint, and defendant would pay him therefor upon delivery of a quitclaim deed therefor, at the rate of $9 per acre, and that plaintiff carried out the said agreement by executing and putting such deed in defendant's possession before the commencement of this action, but that defendant has paid only a part of the amount of said purchase money, and owed plaintiff a balance of $1,955 thereof at the commencement of this action, which balance still remains unpaid and due plaintiff with interest."

Upon this finding, judgment was entered against defendant for that amount, with interest and costs. Defendant excepts to the above finding and, his motion for a new trial being overruled, he appeals.

[1-2] A determination of the controversy depends upon the effect to be given to the language used in the correspondence that passed between the parties up to the time of the execution of the deed. That a valid contract may be entered into by the parties thereto through an interchange of letters cannot be questioned; but, in order to constitute a binding contract in that manner, the mutual covenants of the parties must be stated with the same degree of certainty that is required when the entire contract is contained in one instrument. It must appear from such letters that both the parties did actually agree to the same identical thing; that their minds actually met upon the same transaction. In determining whether there was such a meeting of minds in this case, it is necessary to examine all parts of such letters, their relation to, and their bearing upon each other; and in that way to gather, if possible, the exact meaning intended to be conveyed thereby. If,

after such an examination, it can be said that the minds of the parties actually met and agreed to the same identical transaction; then a binding contract has been entered into. But, on the other hand, if the intention of the parties cannot be ascertained from the language used, or if the language used is reasonably susceptible of different interpretations, and was, in fact, differently understood by the parties, then there is no contract.

[3] Appellant's proposal contained in his letter of July 26th is in the following words:

"Nine dollars an acre is all I am giving for section next to yours. Will give you that for a quitclaim deed to yours."

Respondent contends that he understood, and the trial court found, this to be an offer of $9 per acre for respondent's equity in the land, and that it was such offer, to-wit, $9 per acre for his equity in the land, that he accepted. On the other hand, it is contended by appellant that it was intended only as an offer of $9 per acre, including incumbrances, but that he was willing to accept the quitclaim deed as the instrument of conveyance. In other words, that, when he used the term "quitclaim deed," he had reference only to the character of conveyance he was willing to accept, and that it had no connection whatever with the price he was willing to pay for the land. While the case is not free from difficulty, the language used in the letter, when it is all read together, is susceptible of this interpretation. Appellant was purchasing the adjoining section and was paying $9 per acre for it. It does not appear that such land was incumbered, or that he was paying $9 per acre in excess of incumbrances, or that respondent's land was worth more than that in the adjoining section, but that he was paying $9 per acre for the land, and that he was willing to pay the same amount for the land of respondent. The incumbrances on respondent's land amounted to $4.45 an acre, approximately one-half of what appellant was paying for the adjoining section; but no reason is suggested why appellant should pay, or was willing to pay, half as much again for respondent's land as he was paying for the adjoining tract.

[4] While appellant's letter of August 17th, above quoted, was not written until after the completion of the alleged contract, and for that reason cannot be treated as a part thereof, yet it may be examined for the purpose of ascertaining what appellant's

understanding was of the language used in his letter containing his offer for the land, and the meaning he intended should be conveyed thereby. That the offer is susceptible of the interpretation placed upon it by himself cannot be denied; and, as this interpretation is entirely different from that placed upon it by respondent, it follows that they never agreed to the same transaction—that their minds never met—and hence that no contract was ever entered into between them. Respondent knew, from the contents of said letter of August 17th, that the $1,998.27 was intended by appellant as full payment for the land, and that he had no right to take it on any other terms; and neither he nor the bank acted in good faith when, by their joint acts, they appropriated the draft that they knew was intended as full payment for the land, but refused to deliver the deed until respondent had been paid an additional sum equal to the amount of the incumbrances against the land. From this it follows that there never was any legal consent to the same act by both parties, that there was no contract, and that appellant is entitled to a return of the amount of his draft, together with interest thereon from the date of its delivery to respondent.

The judgment and order appealed from are reversed.

McCOY, J., concurs in result only. WHITING, J., concurs in result.